2410369. You're from Mr. Ligon. May it please the court, good morning. I'm Chevis Ligon and I represent Appellant Detective Hernandez. This case is about Texas state law immunities and state law immunities are not waivable due to a divided heart or violations of internal departmental rules. Under Texas law, a police officer is acting within the course and scope of his employment if he's, one, enforcing general law, or two, and two, in accordance with statutory grants of authority. It does not appear to be in dispute that Detective Hernandez here was enforcing general law because he charged the plaintiffs with a violation of the Texas Penal Code. So that's why I'd like to focus my time on whether or not Detective Hernandez had a statutory grant of authority when he had the plaintiffs charged with a crime. The Garza and Wilkerson v. North Texas University cases establish, first of all, that a police officer is a police officer when they see a crime, and that here the allegations are that the detective saw, as part of his investigation, plaintiffs going through what he considered to be evidence of a crime. At that point, when Detective Hernandez believed, reasonably or not, that he had witnessed a crime, he was, under Texas law, under a duty to report that crime. What the University of Texas case establishes is two things. Number one, a public employee does not have to point to his or her specific job and be able to show that they were undertaking that specific job at that specific time under their specific rules. Instead, in the University of North Texas case, the department chair was not explicitly responsible for hiring and firing. Instead, this court found that she was acting within the course and scope because her job responsibilities touched on employment matters. And so when she supposedly leapfrogged a procedure put in place by the University for hiring and firing that may have been a violation of internal policy, that did not remove her from the protections of state law. What consequence would a finding in Hernandez's favor have? In other words, would this mean that the plaintiff has waived their opportunity to sue the county? Is that the way it works? They have, under the Texas Tort Claims Act, if they bring a claim against an employee that they could have brought against their employer, then the employee is waived. And so the answer is yes, their claims against the city are likewise waived because of Detective Hernandez's state law immunities. Okay, but they could have sued Dallas originally. Correct. Okay. Interesting. The activities that the plaintiffs complain of were part of the same general nature of Detective Hernandez's regular job. When does this issue go to the jury? In a state law context, it does not. State law . . . No, no, no, no. About whether the officer was in the course and scope as opposed to doing the bidding of Stainback. Doesn't that go to the jury sometimes? Not in a state law tort context in that . . . This is all a matter of law? Correct, Your Honor. Well, doesn't state law in both Garza and Gibbons indicate that when an officer is not responding to an immediate crime and there is at least plausible allegations that he is instead protecting a private employer's property or enforcing that employer's property rights, that's a jury question. That's a fact . . . If plausibly alleged, I think there are Texas cases that say under those circumstances, the jury has to sort that out. That's what Judge Fitzwater found. Correct? There are circumstances unlike this one, Your Honor, where that could be the case. There are certainly possibilities . . . Are they the circumstances that I mentioned? Garza, Gibbons, not responding to an immediate crime, plausible allegations that he's protecting . . . He's helping a private employer and not in the course of his official conduct. Are those circumstances . . . Is my understanding of Garza and Gibbons correct? And Judge Fitzwater's. And under those circumstances, that's a jury question if there's plausible allegations. That's correct. However, Garza is not the sole case that we're relying upon. This is not that exact circumstance. What Garza establishes is the principle that when an officer sees a crime, they are effectively on duty and they have a duty under law regardless of whatever their internal rules are or whatever their particular job at a police force is. They have a duty at that point. But Hernandez didn't see this crime. He wasn't responding to an immediate crime, was he? I don't think in Garza the immediacy of the crime is the issue. It's that he witnessed the crime. And so in this case, what the allegations are is that Detective Hernandez witnessed a crime by watching a video. At that point, when he witnessed that, that was when he was at bare minimum charged with the duty of being a police officer. So Garza does not require absolute immediacy. And in fact, in the Texas case, there was no requirement that at that very moment the officer or the department chair was specifically acting in her office or under some sort of specific instruction. Immediacy does create the duty to act. Here, the allegations are that the plaintiffs were charged with a crime based on what Detective Garza saw them do. But he saw them, correct me if I'm wrong, because his employer from Stainback called him, gave him the tape, and he said, hey, don't tell anybody, but here's what I'm going to do. I'm going to follow through with this, but until he gets charged, don't say anything. All of that is stemming, at least as alleged, and as Judge Fitzwater believed to be plausibly alleged, it's in response to a private employer saying, here, go. Assuming as we must, for purposes of 12b-6, that can be correct, yet the Texas case law is clear that a divided heart is insufficient to remove an employee from the protections of state law immunities. In fact, the Texas law on the divided heart point, I mean, Texas law itself speaks maybe out of both sides of its mouth. In Alexander v. Walker and Garza v. Harrison, Texas law says an employee's conduct does not fall within the scope of his employment when it occurs in independent course of conduct not intended by the employee to serve any purpose. Doesn't that port in the employee's intent, not intended to serve any official purpose? How do I square that with the divided heart piece, which is, I understand, another aspect of Texas law. I think, Your Honor, those cases speak to the fact that there can be gray areas because police officers do become police officers when they see a crime. I think you can envision multiple circumstances, particularly a police officer acting as a bouncer at a bar and he sees something and he throws the guy out. That's clearly or arguably for the benefit of the bar owner. In this case, this was a crime taken to the district attorney that was in violation of general law. So this was not the act here that is being complained of was the charge. That's the issue. What is the tortious act that is being complained of? Well, isn't the Weatherby case relevant? It says a bunch of times that the subjective motivation of the defendant is not at issue . . . That's correct, Your Honor. . . . in these determinations. So that's correct, Your Honor. The law in Texas speaks to, as a general matter, if the employee is . . . to take a step back. The question is not whether an employee's motivations are job-related. The question is whether their actions are job-related. And here, the actions are related to Detective Fernandez's employment. And that's not even getting into the fact that he has pled to be, number one, a detective, number two, a detective in property crimes, and number three, specifically assigned to this case. So that removes it from the circumstance where you would often find a fact issue of an officer who sees a fight in a bar that he's working at off-duty. This is not that kind of circumstance that I think those cases envisage. But under these circumstances for 12b-6, don't we have to assume his pleadings to be true and not your pleadings to be true? And his pleadings are that, in addition to what we've already discussed, that your client took this potential investigation to the Special Investigations Unit. They rejected it. And then he circumvented official policy to go to the DA's office to get it indicted. That is the allegation, yes. Well, we have to assume that to be true. Where that gets into, though, are questions of procedure and motivation. And under Texas law, both of those are irrelevant in determining whether or not state law immunity attaches. Particularly, Your Honor, if you're trying to remove state law immunities, then every single Texas state tort is viable. Because in a city like Dallas, and a city with any qualified management, every single state tort is already against the rules. The Dallas Police Department has rules against excessive force. The Dallas Police Department has rules against arresting without probable cause. The Dallas Department has rules for all of these things. So all a plaintiff would have to do is say, he violated one of these rules, therefore he has somehow waived the protections that the state provides. And the question is not whether or not the city provides any sort of protections. The city does not. Detective Fernandez's immunities derive from his state law, from the legislature, not from the city of Dallas. So assuming he completely violated all of these general rules, it is irrelevant. And as the North Texas case indicates, so long as it is touching on his general responsibilities, that is sufficient for state law immunities to attach. I have another question here, and that is, apparently the 1983 false arrest claim remains pending. So what is the consequent, I'm assuming you can't get damages for both false arrest under federal and state law. You'd have the one recovery rule, I would assume. You would always have the one recovery rule. Pardon me, so what's the point here? I think the point is, if I may speak broadly, is qualified immunity restricts discovery. And we have live, as a matter of fact, unqualified immunity. State law, if his immunities are not there, there's no restrictions whatsoever. This could last a year, a year and a half, or two years of discovery. So the disadvantage to us, to Detective Fernandez and to government officials in his place, is they would be subjected to the broad scope of state law discovery and potential liability. And at that point, as courts have, or the Notwomley opinion indicated, that's when settlement for even menial claims becomes a viable business decision. Did you move for qualified immunity on the 1983 false arrest claim in the district court? No, Your Honor. Why? We pled it in our answer, but we did not move to dismiss based on qualified immunity. Why? There was a strategic internal decision made for that, Your Honor. So it just seems odd to complain about the need for the immunities when you chose not to move for qualified immunity on one of the federal claims. Well, they can still do that. I'm not saying they can't. I'm just asking why. I mean, if the whole point is that you need to be immune from the suit, federal law provides you an immunity that you chose not to avail yourself of. That's correct. For whatever reason. We chose to not avail of the immediate ability to file a motion to dismiss based on qualified immunity, based only on what was pled. Based only on what was pled, we moved for the state claims. Because of this court's jurisprudence in Carswell, we now have the opportunity to have a very limited window for summary evidence that we, rightly or wrongly, make a strategic decision on when and what to do on that, Your Honor. Reasonable binds can always disagree. It's the practice of law. Sometimes it is not a science. Judge Fitzwater did reject your argument on the federal false arrest claim and did find that that would survive. And you've also not appealed that. So setting aside the lack of you not pleading qualified immunity, you've also not challenged Judge Fitzwater's finding that there's a viable federal false arrest claim on appeal, correct? We have not appealed that. That's correct, Your Honor. Does that affect your argument that there must be more than just allegations of procedural violations? I mean, there's a live federal claim here? There are certainly allegations that the complaint states that my client had them arrested without probable cause. That's a different kettle of fish from the other state law claims. And whether or not it is wise to move to dismiss based on a pleading versus move for summary judgment on qualified immunity based on this court's Carswell, et cetera, precedent is what is currently live. My time is up. Yes, sir. You have time for a battle. Mr Henley. Thank you, Your Honors. May it please the court. Council has avoided two very specific points that are absolutely pertinent to this case. Number one, neither Garza nor Wilkerson address a dual employment case. You didn't have a department chair who was moonlighting in another venue. Everything that pertained to her termination actions involving Wilkerson were within not only her course and scope as a department chair, but within that proper department. They were all members of the same academic department. It wasn't like someone had brought in somebody from the Department of Engineering and determined how the Department of English was going to run things. We do not have any authority provided by them that a dual employment context would appropriately address. And Judge Fitzwater and Judge Hendricks has already pointed out, wait a second, we're talking about dual employment here. Do you not, is that not a fact question as to What's your best case for that? The best case for that or Dallas? Yes, Judge. In all of his official activities? Well, no, Judge. And the issue is when there is an immediate crime, that is the question that the council has kind of avoided, which is, look, the premise is officers are sort of on call, if you will, at all times. What is the fact issue that the jury would have to decide here? The fact issue the jury would have to decide would be during the times that period, because unlike a situation where an officer is at Starbucks and a robbery takes place and he's literally at home on the weekend at Starbucks with his friends or his family, that's not what happened here. We're talking about what occurred over the space of about two years. I think you're trying to morph a false arrest claim into a malicious prosecution, which is not at issue here because I fully agree with Judge Fitzwater saying it was not clearly established at the time. But take the example, suppose you're the security guard at a Starbucks, the off-duty security guard, and the Starbucks gets robbed while you're not there, but you get to see the video later on. And you get to, then you prosecute. It seems to me that the proposition you're arguing for suggests that there's always a jury issue whenever any policeman is in a dual capacity, because you're always saying, well, they were an agent of Starbucks at the time, and therefore whatever they have to say is suspect, or certainly not subject to abuse. Well, clearly capacity matters, and in what capacity the person is serving. Well, I know, and the proposition you're arguing, I mean, everything this fellow did, unsavory as the case may be between two unfriendly neighbors, was doing it as a Dallas police officer. He wasn't ejecting somebody from a bar and roughing them up. No, no, certainly he wasn't. I mean, it certainly isn't the classic ejection, you know, situation where somebody is spontaneously reacting to something. This was more of a campaign, if you will, that occurred over time. So what's your best case to support that there's some issue here? Well, again, Judge Fitzwater had indicated and stated, and they haven't challenged this idea, that when there is a question about which effectively master the defendant is serving, it's a jury issue. It is up to the finder of fact. But the Garza case was dual, wasn't it, or not? There might have been a dual element there, but— At least an off-duty. But he was responding to something unlike Detective Hernandez. Detective Hernandez is—and I think Detective Hernandez was absolutely—I mean, one of the reasons why this occurred in the first place is the Dallas Police Department did not even come out to the scene of the shooting. If you roll the clock back, there was a shooting, there were shots fired, a 911 call was made, and my clients wait around. They're waiting for—uniformed, typically, because in a situation like that, it is going to be a uniform response. Detectives are not going to come out. And it never happened. And then they went out and started looking around, and as they demonstrated, they collected the casings and preserved them, you know, preserved them for law enforcement, not tampering, and then still waited. So the idea behind observing a criminal activity, that's not what took place here. He found out about something later on via phone call, as Justice Hendricks indicated, and then interjected himself into it. And I think what is important here, Judge, is that 101.0115 says—defines course and scope as the task that is lawfully assigned. This was not a task that was lawfully assigned. Well, let's see. I mean, the other side says, A, he was a detective, B, he specialized in property crimes, and C, he got himself assigned to the case. Well, number one, in reverse order, C says assigned. It doesn't say lawfully assigned. And that's important, because here's what happened. Detective Hernandez was an officious intermediary. He jumped into this even after, as Justice Hendricks, or I think it may have been Justice Oldham, indicated, look, they took the case to the Special Investigations Unit, which has control of these matters. And they said, we don't see a crime here. I'm very concerned. I mean, as I said, I fully understand that this has to do with two unfriendly neighbors, but I can also see the general idea that a business proprietor who hires an off-duty person who's friendly with the off-duty person is going to hope that the off-duty person will carry through when the local police department may have fallen down on the job. I mean, just as a general principle, I just find it very hard to see how you limit the idea that you're getting to if there's no immunity here. OK, so I take it the suggestion is that if you feel like your property rights are not being adequately—because interestingly enough, the plaintiff in this case actually has protected commercial property of my own. And so the suggestion— You don't know who shot the gun, what they were trying to do, and so on. You, as a neighbor, want to find out, because you don't want it to happen again, because next time it could be your property. Naturally. And apparently in this particular case, the special investigation unit made all those determinations. That number one, our clients had nothing to do with this, because again, number two, going back to the notion of lawful assignment, he was a property crime detective for one year. Why do I stress that? Because the underlying shots fired call, those are typically murder, aggravated assault, for which there is an entirely different unit. Just because he has a badge and a gun and he's the title detective does not mean he gets to do everything within the police department. If you're an officer and you're not on the SWAT team, you don't just get there and say, you know what, I didn't pass. I didn't pass the test, but I'm pretty good with a gun. I'm going to go get some of my own equipment and I'm going to show up. That is not a task that's been lawfully assigned to you. There is, understandably, police entities, particularly in a metropolitan police department as large as the Dallas Police Department, with some 3,000 employees, there is a quasi, well, there's a command and control, there's a chain of command, and there's absolutely special assignments. And in doing, jumping into doing something that doesn't belong to you and not disclosing things, and that's beyond dispute. Number one, they didn't dispute it, but number two, under the standard review, as has been pointed out many times here, you have to take it as true. He violated not only the general orders of the department, but the local government code, which predicates the necessity of holding these general orders as sacrosanct. Because the whole idea behind these things is to prevent rogue improvisation. Here's what Garza says. Simply stated, a governmental employee is discharging generally assigned job duties if the employee was doing his job at the time of the alleged tort, which I assume is the date of the false arrest. For purposes of 101.106F, the employee's state of mind, motives, and competency are irrelevant so long as the conduct was pursuant to the job responsibilities. So I think the question here, and this might address some of the questions that the judges had asked earlier about why wasn't the other 1983 Fourth Amendment false arrest claim addressed? They haven't addressed it. And in this particular case, my clients were only arrested because they were indicted. As your honors are all too familiar, there are a variety of ways that people get arrested. Sometimes it's pre-indictment. Sometimes it's post. And in this particular case, the case was submitted pre-indictment once the grand jury and the district attorneys who had been on the receiving end had been adequately deceived. After the indictment, my clients were unlawfully arrested. And they perhaps strategically decided not to address that here because Judge Fitzwater did an exhaustive analysis about the independent intermediary doctrine that was addressed here. The grand jury, the district attorney were duped by his furtive efforts, and as a result, my clients were arrested. So I think to address a concern that your honor Justice Jones had addressed earlier, this is not an end run on malicious prosecution. Judge Fitzwater obviously did what he did, and we haven't challenged that. That's not the issue before this court. I don't have anything else to add. If there's anything that your honors don't feel that I've adequately answered, please do. Thank you. All right. Mr. Ligon. Thank you. Your honors, to clear up a couple of things. Counsel said that Garza was not a dual employment circumstance. That's flatly wrong. He was a courtesy patrol officer outside of his jurisdiction. According to the Texas Supreme Court, in that capacity, his primary responsibility was to deter criminal activity by being visible, circulating notices, inspecting property for broken lights, safety concerns, patrolling, etc., etc. He was not only that. His contract said, with the apartment complex, I'm not a police officer. So he was outside of his jurisdiction. He wasn't on duty. His job title had nothing to do with being a police officer. No accident that Justice Guzman wrote the opinion. Big fan.  The question also on lawful assignment. Counsel keeps saying that there was no lawful assignment, yet he doesn't explain what law is being broken by. What law, there's no case law provided that said this law states that a detective has to be assigned to a case this way and this way and this way. As Judge Jones, you point out, perhaps it's unsavory, but that's not the same thing as unlawful. And alleging that someone did something with an unsavory motive is the easiest thing in the world. And if that were, if all it took were that to remove state immunities, then there would be no point in state immunities. Because you can always allege a dark heart. You can always allege divided motives. Third, on the question of general orders, the Dallas Police Department's general orders are 450 pages long, single space type, about 8 point font. You can always find something that someone supposedly violated. But regardless, Detective Hernandez's state law immunities do not derive from his employment with the city. They derive from the state. Lastly, the plaintiff's arguments are self-defeating in another way in that they claim that this had nothing to do with Detective Hernandez's job, yet he violated his job's rules. So how is it that he's somehow not fulfilling or doing anything related to his job when he's also violated his job's rules? And further, these are not violating job rules in some sort of broad sense, like not bringing disrepute or bad reputation to the city or to the department. This is violating specifically, according to them, how he got assigned and also questions about conflicts of interest. So, if simply we're asking, what are his motivations and he had this conspiracy behind him to benefit someone else. The plaintiffs have offered no case, Texas or this court's, or a district court opinion that says, in this scenario, this is sufficient. This type of divided heart in these circumstances is enough. And that being somehow assigned in an unsavory way with scare quotes is sufficient to say he was illegally assigned. I don't believe the case law requires us to show that he was assigned. I don't believe the case law shows that we have to show that he was a property detective. I don't think that we have to show that anything other than he was a Texas police officer. And yet, in this case, we're levels away. We're steps away from the guards' opinions. Lastly, I would note that an aggrieved party in the plaintiff's alleged circumstances has many avenues for seeking retribution, seeking discipline, or seeking payment. There are Section 1983 claims. There is the internal affairs process and also official oppression. Under Texas state law, it is a crime for a public servant to intentionally subject another to mistreatment, arrest, detention, etc., etc. So it's not as though, in this circumstance, if state law immunities prevent them from pursuing state law claims to get state law damages, that they are somehow left out in the cold. For that reason, Your Honor, we would ask that this Court reverse the District Court's denial of Detective Hernandez's motion to dismiss. Nothing else? No, sir. Thank you very much. All right, thank you all very much. We are in recess.